UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

HASSAN SHABAN KANYIKE,

Petitioner,

v.

JAMES JANECKA, Warden, Adelanto ICE Processing Center, et al.,

Respondents.

Case No. 5:26-cv-04579-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I.

## PROCEDURAL HISTORY

On August 13, 2026, petitioner Hassan Shaban Kanyike ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1).[1]

/ / /

/ / /

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

On August 14, 2026, (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed a Notice of Intended Removal ("Notice") indicating that Petitioner had been scheduled for transfer out of this judicial district on August 19, 2026, in order to effectuate his removal to Cameroon pursuant to his final order of removal. (Docket No. 6 at 2; see Docket No. 6-1 at 2).

Also on August 14, 2026, Petitioner filed a document entitled "Petitioner's Emergency Response to Federal Respondents' Notice of Intended Removal and Request for Immediate Relief" ("Emergency Response"). (Docket No. 7). In his Emergency Response, Petitioner requested that the Court "enter immediate temporary relief sufficient to preserve the status quo while the Court considers the Petition and the parties' jurisdictional arguments." (Id. at 1-2). Petitioner alleged that the underlying Petition "challenges Petitioner's removal to Cameroon, a country that was not adjudicated as a country of removal in his prior protection proceedings and as to which Petitioner has never received a meaningful opportunity to present a claim for protection from persecution or torture." (Id. at 3). In the Emergency Response, Petitioner sought an administrative stay prohibiting Respondents from removing Petitioner pending further order of this Court. (Id. at 4).

On August 16, 2026, the previously-assigned Magistrate Judge ordered Respondents to respond to Petitioner's Emergency Response. (Docket No. 8). The Court requested Respondents to (1) attach as an exhibit a copy of Petitioner's final order of removal, and (2) address whether Petitioner's removal to a third country impacts the Court's jurisdiction to enjoin Petitioner's scheduled removal. (Id. at 2).

On August 17, 2026, Respondents filed a Reply to Petitioner's Emergency Response) (Docket No. 10), with two attached exhibits (Docket Nos. 10-1 and 10-2).

/ / /

/ / /

On August 18, 2026, the previously-assigned Magistrate Judge recused herself, and the matter was transferred to this Court. (Docket No. 11).

Also on August 18, 2026, the Court issued an Order prohibiting Petitioner's removal from the Central District of California pending resolution of this case, or unless otherwise ordered by the Court. (Docket No. 12).

On August 20, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5 at 2, 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 14), with two attached exhibits (Docket Nos. 14-1 and 14-2). On August 21, 2026, Petitioner filed a Reply to the Answer ("Reply"). (Docket No. 15).

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a native and citizen of Uganda. (Petition at ¶ 29). Petitioner was admitted to permanent residence on January 21, 2014, as an asylee, and he has resided in the United States ever since. (Id. at ¶ 30). On February 5, 2021, in the United States District Court for the Central District of California, Petitioner entered a plea of guilty to the charge of wire fraud under 18 U.S.C. § 1343. (Id. at ¶ 31). He was sentenced to 51 months imprisonment but served 2 years. (Id.). Following his conviction, he was transferred to Immigration and Customs Enforcement ("ICE") custody and placed into removal proceedings. (Id. at ¶ 32). Since 8 U.S.C. § 1101(a)(43)(M)(i) designates a loss exceeding $10,000.00 to be an aggravated felony, Petitioner's removal was mandatory under 8 U.S.C. § 1227(a)(2)(A)(iii). (Id.).

/ / /

/ / /

On an unspecified date, Petitioner applied for withholding of removal to Uganda and for protection under Article III of the Convention Against Torture ("CAT"), based on his sexual orientation. (Id. at ¶ 33). On June 13, 2024, Petitioner was ordered removed; however, the Immigration Judge granted Petitioner's deferral of removal under CAT. (Id.; see Docket No. 14-1 at 2, 4). As a result of the deferral of his removal order, Petitioner's removal order was not executed, and instead, he was released from ICE custody and required to complete routine ICE reporting. (Petition at ¶ 34). During his period of release, Petitioner remained subject to ICE supervision, including electronic monitoring and reporting requirements imposed by Respondents. (Id. ¶ 35).).

On August 12, 2026, ICE re-detained Petitioner. (Id. at ¶ 36). On the same date, Petitioner was served with a Notice of Revocation of Release, which informed him that he had previously been ordered removed to Uganda, but because his removal had been deferred, his case was being reviewed for removal to a third country. (Docket No. 14 at 3; Docket 14-1 at 2). On the same date, following his re-detention, Petitioner was also provided with an informal interview, and was provided an opportunity to respond to the reasons for his revocation in the notification, "but [Petitioner] did not provide any response." (Docket No. 14 at 3). On August 14, 2026, Petitioner was served with a Notification of Removal, informing him that he was scheduled to be transferred out of the Central District of California on or after August 19, 2026, for purposes of effectuating his removal to Cameroon. (Id. at 4).

Cameroon was not adjudicated in Petitioner's underlying removal proceedings as the country of removal and Petitioner has never received an adjudication of his eligibility for withholding or CAT protection from removal to Cameroon. (Petition at ¶ 39). Petitioner has a substantial, individualized fear of persecution and torture if removed to Cameroon. (Id. at ¶ 40). Cameroon criminalizes consensual same-sex sexual activity. (Id.). LGBT individuals in

Cameroon have been subjected to arrest, detention, threats, violence, mistreatment, and other abuse. (Id.). These circumstances are directly relevant to Petitioner because his sexual orientation (Petitioner identifies as gay, id. at ¶ 33) formed part of the factual basis for his prior request for protection from removal and his ultimate grant of CAT deferral. (Id. at ¶ 40).

Petitioner alleges that a determination that Petitioner faced a sufficient danger of torture to warrant CAT deferral as to Uganda does not automatically adjudicate the danger posed by Cameroon. (Id. at ¶ 41). Conversely, the prior proceedings cannot fairly be treated as an adjudication rejecting a Cameroon-based protection claim because Cameroon was never the subject of that adjudication. (Id.). Petitioner therefore seeks a meaningful opportunity to present evidence concerning the likelihood that he would face persecution or torture in Cameroon and to obtain adjudication of any protection for which federal law makes him eligible, prior to any removal to Cameroon. (Id. at ¶ 42).

Petitioner alleges that if he is removed to Cameroon, he could suffer detention, abuse, torture, or other irreparable injury before any court or administrative tribunal could act. (Id. at ¶ 43).

Petitioner challenges both the legality of his present detention and any effort to facilitate his removal to Cameroon without a meaningful opportunity to assert Cameroon-specific fear-based protection. (Id. at ¶ 47).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Id. at ¶¶ 3, 18; see https://locator.ice.gov/odls/#/results).

## III.

## PETITIONER'S CLAIMS

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention is unlawful and subject to review under 28 U.S.C. § 2241; (2) Petitioner's detention is in violation of Petitioner's right to substantive and procedural due

process under the Fifth Amendment; (3) Petitioner's detention is in violation of the Fifth Amendment and Petitioner's right to assert a fear-based claim under CAT; and (4) Petitioner's detention is in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2). (Petition at 11-14).

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks

omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process ...." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests

within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.”).

## V.

## DISCUSSION

“Freedom from imprisonment . . . lies at the heart of the liberty” protected by the Due Process Clause. Zadvydas, 533 U.S. at 690. This liberty interest is vested in “all ‘persons’ within the United States,” including noncitizens, “whether their presence here is lawful, unlawful, temporary, or permanent.” Id. at 693; see also J.G.G., 604 U.S. at 673 (“The Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings.”) (internal quotation marks and citation omitted).

Federal immigration law and its attendant regulations govern the procedures for removing noncitizens living unlawfully in the United States, including their detention during removal proceedings. Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021). Enforcement of these procedures has been delegated to the Executive Branch, LaDuke v. Nelson, 762 F.2d 1318, 1325 (9th Cir. 1985), *amended by*, 796 F.2d 309 (9th Cir. 1986), and in effectuating its duties, “an agency must abide by its own regulations,” Fort Stewart Schs. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 654 (1990). Even where agency action is discretionary, an agency's “failure to exercise its own discretion, contrary to existing valid regulations,” is a violation of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). Thus, when a noncitizen is ordered removed and detained, immigration officials must act in a manner that comports with principles of due process and applicable federal statutes and regulations. See Burunsuzyan v. Noem, Case No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at *3 (C.D. Cal. Jan. 27, 2026) (“[I]mmigration enforcement agencies’ failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights.”)

(citing cases). The failure to follow such regulations is unlawful, the remedy for which "may be injunctive relief, reversal of the agency action, or reversal and remand with an order requiring the agency to follow its own procedures." Clemente v. United States, 766 F.2d 1358, 1365 n.10 (9th Cir. 1985).

1. Relevant Legal Authority.

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The government is required to detain the noncitizen for this initial 90-day period for the purpose of effectuating removal. Id. § 1231(a)(2)(A). If removal is not effectuated during this period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). Certain categories of removable noncitizens may be detained beyond the removal period, as delineated in section 1231(a)(6), so long as their detention comports with principles of due process. *See* Zadvydas, 533 U.S. at 689, 701 (holding that due process requires reading in an "implicit limitation" on the duration of detention under § 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

Once a noncitizen is released pursuant to section 1231(a)(3), their release may be revoked in accordance with federal regulations. First, an individual subject to an order of supervision "who violates any of the conditions of release may be returned to custody and is subject to" certain penalties, including possible criminal prosecution. 8 C.F.R. § 241.13(i)(1); see also 8 C.F.R. § 241.4(l)(1). Second, for those who have not violated their conditions of release, the government may "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release where (i) the purposes of release have been served; (ii) the alien violated a condition

of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings; or (iv) the conduct of the alien indicates that release would no longer be appropriate. Id. § 241.4(l)(2).

When revoking an order of supervision, ICE is required to notify the alien "of the reasons for revocation of his or her release" and to "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. § 241.13(i)(3); see also id. §§ 241.4(l)(1), (3). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. Id. § 241.4(l)(3).

With regard to removal to third countries, INA § 241(b)(3)(A) provides that "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Despite the use of the word "may," this provision establishes a mandatory prohibition, not a discretionary one. See Camposeco-Montejo v. Ashcroft, 384 F.3d 814, 819 (9th Cir. 2004). The Ninth Circuit has consistently held that "withholding of removal is not discretionary" and that the Attorney General may not remove a noncitizen to a country where his life or freedom would be threatened on a protected ground. Delgado v. Holder, 648 F.3d 1095, 1101 (9th Cir. 2011). The Supreme Court has likewise recognized that relief must be granted where eligibility is established. Moncrieffe v. Holder, 569 U.S. 184, 187 n.1 (2013).

Similarly, regulations implementing CAT require protection where a noncitizen establishes that he is "more likely than not to be tortured in the country of removal." 8 C.F.R. § 208.16(c)(1). Where that standard is met, relief "shall be

granted" absent narrow exceptions. 8 C.F.R. § 208.16(d)(1). Thus, both statutory withholding and CAT protection impose mandatory limits on the government's removal authority. See Johnson v. Guzman Chavez, 594 U.S. 523, 531 (2021).

Because these protections are mandatory, the government must provide a meaningful procedural mechanism for noncitizens to assert fear-based claims prior to removal. The governing regulations reflect this requirement. Where a noncitizen expresses fear of removal, the agency must refer the individual for a reasonable fear determination by an asylum officer. See 8 C.F.R. §§ 208.31(b), 241.8(e); Ortiz-Alfaro v. Holder, 694 F.3d 955, 956 (9th Cir. 2012). These provisions use mandatory language, requiring that the noncitizen "shall be immediately referred" for such screening. 8 C.F.R. § 241.8(e). The purpose of this framework is to ensure that noncitizens are not removed without first receiving an opportunity to establish eligibility for protection from persecution or torture.

2. Analysis.

Here, Petitioner contends that Respondents have violated his right to due process by re-detaining him following his release on supervision for purposes of removing him to a third country, Cameroon, without having afforded him constitutionally adequate process, including notice and opportunity, to raise his objections to his pending removal to a third country, Cameroon, based on his credible fear of persecution or torture. (Petition at 1-2, 8-9, 13-14). As set forth below, the Court finds that Petitioner is entitled to habeas relief.

On June 13, 2024, Petitioner was placed on an Order of Supervision ("OSUP"), following his order of removal to Uganda, and his corresponding grant of deferral of removal. (Petition at ¶¶ 33-34; Docket No. 14 at 3). During his release on an OSUP, Petitioner was subject to ICE supervision and reporting requirements, including electronic monitoring. (Petition at ¶ 35). Respondents do not allege that Petitioner violated any of the conditions of his OSUP, and the revocation of his

release was not based on any alleged violation (see Docket No. 14-2). On August 12, 2026, ICE re-detained Petitioner. (Petition at ¶ 36; Docket No. 14 at 3). Also on August 12, 2026, following Petitioner's arrest and re-detention, Respondents allege that he was provided a Notice of Revocation of Release (attached to the Answer as an exhibit, see Docket No. 14-2 ), which indicated that Petitioner's OSUP has been revoked pursuant to 8 C.F.R. § 241.13(i) because he had been ordered removed to Uganda but that, in light of his deferred removal, "his case was under review for removal to an alternate country." (Docket No. 14 at 3). Respondents also provided Petitioner with an informal interview on August 12, 2026, and although Petitioner was provided the opportunity to respond to the reasons for his revocation, "he did not provide any response." (Id.). In the Reply, Petitioner argues that he was unable to provide any sort of meaningful response at the August 12, 2026 informal interview since he was not informed Respondents intended to remove him to Cameroon until August 14, 2026. (Docket No. 15 at 2-3).

Following his re-detention, on August 14, 2026, Respondents served Petitioner with a Notice of Intended Removal, which stated that Petitioner was scheduled to be transferred out of this judicial district on or after August 19, 2026, to effectuate his removal to Cameroon pursuant to his final order of removal. (Docket No. 14 at 2).

Based on the above facts, it is apparent that ICE did not determine that Petitioner was going to be removed to Cameroon until after his OSUP was revoked and he was detained on August 12, 2026. Consequently, it appears that Respondents had not properly determined that circumstances had changed for purposes of revoking Petitioner's OSUP and therefore, failed to comply with the procedures for revocation of Petitioner's supervised release.

Under 8 C.F.R. § 241.13(i), ICE may revoke Petitioner's OSUP upon a violation of the conditions of release, or upon a finding of "changed circumstances,"

such that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)(2). Courts do not make the initial determination of changed circumstances. Instead, "[t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." Kong v. United States, 62 F.4th 608, 620 (1st Cir. 2023). When assessing if there is a significant likelihood of removal in the reasonably foreseeable future, immigration regulations instruct that ICE "shall consider all the facts of the case," including (1) "the history of the alien's efforts to comply with the order of removal," (2) "the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts," (3) "the reasonably foreseeable results of those efforts," and (4) "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." 8 C.F.R. § 241.13(f).

Here, as noted, Petitioner was detained on August 12, 2026. According to the Notice of Revocation, also dated August 12, 2026, Respondents did not cite changed circumstances as the basis for the revocation of release – as required by Section 241.13(i)(2). Instead, the Notice of Revocation indicated that Petitioner had been ordered removed to Uganda and that his "case is under review for removal to an alternative country." (Docket No. 14-2 at 2-3). Because Petitioner was not notified until August 14, 2026 that Respondents intended to remove him to Cameroon, it appears that at the time of his arrest and re-detention on August 12, 2026, Respondents had not identified the specific third country to which Petitioner would (or could) be removed.

The regulatory procedures governing third country removal require the government to provide a noncitizen with the opportunity to raise any credible fear

objection prior to removal to any third country. As noted, where a noncitizen expresses fear of removal, the agency must refer the individual for a reasonable fear determination by an asylum officer. See 8 C.F.R. §§ 208.31(b), 241.8(e); Ortiz-Alfaro, 694 F.3d at 956.

Here, Respondents did not provide Petitioner notice of the particular third country to which they intended to remove him at the time they revoked his OSUP and provided him an informal interview, which made the process intended to provide some minimal protection to Petitioner meaningless, since Petitioner was not informed as to which country was being considered. Indeed, absent the filing of the instant Petition and the intervention of the Court, it appears that Petitioner would have been removed to a third country without being provided the requisite legal protections. Given that Petitioner appears to have a credible fear of persecution and/or torture if removed to Cameroon, it is not at all clear that there is a significant likelihood that he will be removed in the reasonably foreseeable future. Therefore, the Court concludes that Respondents failed to adequately comply with the governing regulations and authority for purposes of revoking Petitioner’s supervised release.

Thus, absent a pre-detention determination of changed circumstances, Petitioner's detention is not authorized by immigration regulations. See V.K. v. Noem, Case No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026) (granting Temporary Restraining Order where “[b]efore re-detaining [Petitioner], Respondents did not provide him with any written notice explaining the basis for the revocation of his release”); Uzzhina v. Chestnut, Case No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) (“[S]imply applying for travel documents after detention is insufficient to show changed circumstances warranting the detaining of a petitioner.”); Duong v. Charles, Case No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025)

("[T]he record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on July 1, 2025. Instead, the record shows that the Government did not even submit a request to Vietnam for travel documents until July 30, 2025—*almost a month after* re-detaining Petitioner.").

Accordingly, the Court finds that ICE violated Petitioner's due process rights. See Duong, 2025 WL 3187313, at *5 ("[T]he Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3)."); Nazarian v. Noem, Case No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *4 (C.D. Cal. Nov. 3, 2025) ("Petitioner is likely to succeed on his claim that the revocation of his release and subsequent re-detention violate ICE's own regulations and, thereby, the Due Process Clause.").

## VI.

## CONCLUSION

IT THEREFORE IS ORDERED that the Petition is granted and that Judgment be entered: (a) Declaring that ICE's revocation of Petitioner's Order of Supervision and subsequent re-detention violated federal law and the Due Process Clause of the Fifth Amendment to the United States Constitution; (b) ordering Petitioner Hassan Shaban Kanyike (A# 205-737-729) to be released from custody on the same conditions to which he was previously subject; (c) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (d) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from: (i) Re-detaining Petitioner without notice and an individualized pre-detention hearing before a neutral arbiter at which it is determined that detention is lawful and warranted under the applicable statutes and regulations either because Petitioner has violated a term of his Order of Supervision or because his removal from the United States is significantly likely in the reasonably foreseeable future, including that

Respondents have procured travel documents for Petitioner and that such documents are in the possession of ICE; and (ii) removing Petitioner to any third country without written notice to both Petitioner and Petitioner's counsel in a language the Petitioner can understand. Following notice, Petitioner must be given a meaningful opportunity, and a minimum of ten (10) days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal. If Petitioner demonstrates "reasonable fear" of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings. If Petitioner is not found to have demonstrated a "reasonable fear" of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days, for the noncitizen to seek reopening of his immigration proceedings; and (e) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 28, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE